[Civ. No. 22384.   First Dist., Div. Three.   Oct. 27, 1965.]

ORBEN B. STORY, Plaintiff and Respondent, v. GATEWAY CHEVROLET COMPANY et al., Defendants and Appellants.

John A. Putkey and Frank C. Vorsatz for Defendants and Appellants.

Stanley W. Blackfield for Plaintiff and Respondent.

SALSMAN, J.—This is an appeal from a judgment rescinding a conditional sales contract between respondent Story and appellant Gateway Chevrolet Company, and awarding Story $2,650 in compensatory and punitive damages against Gateway and appellants Gil Hile, Jim Wessman, Max Rubin, Eugene Davenport and Larry Robinson, the latter persons

having been employees of Gateway at the time the contract was made.

Appellants assert that no grounds for rescission existed and that in any case the damages awarded were improper.

The record discloses that on Sunday, September 24, 1961, respondent Story went to the premises of Gateway Chevrolet Company intending to purchase an automobile. He had previously seen television advertisements of Gateway, representing that they would ". . . tailor a deal to anyone that would come over and buy a car." At the time he went to Gateway, respondent was the owner of a boat, motor and trailer and was making payments on this outfit at the rate of about $50 per month. At Gateway's premises, respondent talked to several salesmen and explained to them his desire to buy a car, trade in his boat, motor and trailer subject to its encumbrance, and emerge from the transaction with payments of approximately $50 per month. Respondent was assured by appellants that his boat outfit could be used as a trade-in and down payment. Several salesmen presented figures on different cars, but in each case the final result was unsatisfactory because monthly payments were too high. Respondent spent most of the day at appellants' premises. Finally appellant Davenport proposed purchase of a 1960 Plymouth with an allowance of $1,200 to respondent for his boat, motor and trailer, with $58 as the monthly payment on the contract balance. This arrangement was satisfactory to respondent. Davenport then presented a contract form in blank, and asked that respondent initial it in 10 places, representing that he would ". . . fill the contract out . . ." while respondent and appellant Rubin were gone to get the boat, motor and trailer. Respondent initialed the blank form as requested. Upon his return he found the written contract filled in and completed by appellants. Other papers relating to transfer of title to the boat, motor and trailer had also been prepared for respondent's signature. Respondent did not read any of these documents, but there is testimony that the contract was read to him before he signed it. Shortly after signing the contract, however, respondent examined it in some detail. He noticed what he thought to be an allowance of $125 for his boat, motor and trailer. In fact, as the written contract shows, this sum was stated to be the "Total down payment to seller— cash and/or trade-in". Above this item at a place on the written contract where respondent had been asked to place his initials when the form was in blank, was written the words

"No Trade." Respondent protested these provisions of the contract, but his protest brought only angry words from appellant Davenport. Respondent made no further objection at that time for reasons he stated at trial. "My car was locked up in the back lot, and my boat was . . . hooked onto their truck in the garage, . . . and Mr. Davenport was getting very angry. I — I figured I would . . . get out the best way I could. . . ." Respondent left appellants' premises, driving the 1960 Plymouth. Later respondent consulted an attorney. Prompt notice of rescission of the contract was given to appellants and demand made for the return of respondent's property. At the same time respondent offered to return everything of value he had received from appellants. Appellants did not return respondent's property. About a month after this transaction, appellants entered respondent's house during his absence, gained access to his garage, and repossessed the Plymouth.

The trial court found that the written contract did not comply with section 2982 of the Civil Code[1] in that it did not state the true down payment, did not describe the true trade-in or state the true unpaid cash balance or contain an itemization of official fees charged. The court further found that appellants had committed a trespass upon respondent's property in repossessing the Plymouth, and that appellants were guilty of malice and oppression in their conduct. The court gave judgment in respondent's favor for the return of his property, the sum of $2,150 as damages, plus $500 as punitive and exemplary damages.

▆ Appellants first contend that the trial court erred in its

---

[1] In 1961 the relevant part of section 2982 read: "(a) Every conditional sale contract for the sale of a motor vehicle, with or without accessories, shall be in writing, . . . and shall contain all of the agreements between the buyer and the seller relating to the personal property described therein. It shall be signed by the buyer or his authorized representative and by the seller or its authorized representative, and when so executed an exact copy thereof shall be delivered by the seller to the buyer at the time of its execution. It shall recite the following separate items as such, in the following order: 1. The cash price of the personal property described in the conditional sale contract. 2. The amount of the buyer's down payment, and whether made in cash or represented by the net agreed value of described property traded in, or both, together with a statement of the respective amounts credited for cash and for such property. . . . 3. The amount unpaid on the cash price, which is the difference between Items 1 and 2. 4. The cost to the buyer of any insurance, the premium for which is included in the contract balance, . . . 5. A description and itemization of amounts, if any, which will actually be paid by the seller or his assignee to any public officer as fees in connection with the transaction, which are included in the contract balance. . . ."

finding that the written contract did not comply with section 2982.[2] But the record entirely refutes this contention. Respondent's testimony is clear that he intended his boat, motor and trailer to be a trade-in on any car purchased from appellants. The written contract, which is before us as an exhibit, makes no reference to any such property as a trade-in, and thus fails to comply with section 2982, subdivision (a)2. Moreover, the written contract shows a charge of $2.00 under the heading of "Fees Paid", but no itemization of such fees is given as required by subdivision (a)5 of the statute. In these particulars at least, the written contract fails to comply with the statute. ■ The purpose of the statute, of course, is to protect purchasers of motor vehicles against excessive charges by requiring full disclosure of all items of costs, and its provisions are mandatory. (*Carter* v. *Seaboard Finance Co.*, 33 Cal.2d 564, 573 [203 P.2d 758].)

Appellants next contend that the award of damages is erroneous. The trial court awarded respondent damages in the sum of $2,150. $5.00 of this amount was for the alleged trespass by appellants when they entered respondent's home and repossessed the Plymouth. Two thousand one hundred forty-five dollars was allowed respondent as the reasonable rental value of his boat, motor and trailer during the period of its wrongful detention by appellants. There was testimony that the reasonable rental value of respondent's property was $15 per day, and that it was used principally on weekends. Appellants retained possession for a total of 143 weekends, and the trial court fixed damages based upon $15 per weekend for the period of wrongful detention. But appellants contend that damages are not to be measured by the reasonable rental value of the property. We do not agree. On facts here present we think the trial court adopted an appropriate measure of damages.

■ The primary object of an award of damages in a civil action is to grant just compensation to the injured party for his loss. (25 C.J.S., Damages, § 3, p. 461.) ■ The ownership of personal property carries with it the right to its use, and where, as here, one party has wrongfully deprived the other of the right to the use of his personal property, an award of damages based upon the reasonable value of such use is proper. In *Atlas Development Co.* v. *National Surety Co.*, 190 Cal. 329 [212 P. 196], the plaintiff had been wrongfully

---

[2]All section references are to the Civil Code.

deprived of his personal property. In affirming a judgment in his behalf, based upon the reasonable rental value of his property, the court stated at page 332: ''There is no ground to question that a proper and recognized measure of damages for the wrongful taking or detention of personal property is the reasonable value of the use of the property during the period of detention.'' (See also *Meyers* v. *Bradford*, 54 Cal. App. 157 [201 P. 471].) ▮ Here respondent was entitled to recover his property because of appellants' violations of section 2982. (*General Motors Accept. Corp.* v. *Kyle*, 54 Cal.2d 101, 111 [4 Cal.Rptr. 496, 351 P.2d 768].) ▮ Appellants' detention of the property after demand for its return made such detention wrongful and entitled respondent to such damages as he could prove because of the wrongful detention (*Ruzanoff* v. *Retailers Credit Assn.*, 97 Cal.App. 682, 685 [276 P. 156]) and the court did not err in measuring such damages by the reasonable value of the use of the property. (*Tucker* v. *Hagerty*, 37 Cal.App. 789, 796 [174 P. 908].)

Appellants also attack the award of punitive and exemplary damages to respondent. Appellants cite section 3294. That section reads: ''In an action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, express or implied, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.'' ▮ Appellants contend that under this section exemplary damages may not be awarded for failure of their contract to comply with section 2982. Appellants' contention might have merit if all that was involved here was an innocent failure on the part of appellants to conform their contract to the requirements of the statute. But there was evidence before the trial judge from which he could reasonably infer that the form of the contract was not the result of innocent bungling on the part of appellants. Thus, there was evidence that appellants had the contract initialed in 10 places by respondent while it was in blank and that it was signed by respondent without being read by him. Respondent's protest concerning inaccuracies in the contract was met with expressions of anger on the part of appellant Davenport, and the court could reasonably infer that immediately after respondent signed the contract he was put in fear by the conduct of appellants. Appellants made quick recovery of the vehicle sold to respondent, yet retained possession of respondent's boat, motor and trailer for 143 weeks. On these facts the

court could properly find, as it did, that appellants were guilty of malice and oppression on their part, and thus award punitive damages.

■ Appellants also contend that the court erred in awarding damages for trespass. They point to those provisions of the written contract which give them a right of repossession upon default of the buyer, and in the exercise of that right to ". . . enter upon the premises where said property may be and remove same.'' But here respondent has rescinded the contract as he had a right to do because of appellants' violations of section 2982, subdivision (a). While respondent could not avoid the written contract and at the same time assert possessory rights in the conditionally sold car (*General Motors Accept. Corp.* v. *Kyle, supra,* 54 Cal.2d 101, 112) it does not follow that appellants may justify a trespass in the recovery of their vehicle. They made no demand for the return of their property. They did not offer to return respondent's boat, motor and trailer. They did not seek a court order for the return of the property. On the contrary, they resorted to direct and summary action, invading respondent's home and garage in his absence. On these facts an award of damages for trespass was entirely proper.

The judgment is affirmed.

Draper, P. J., and Devine, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied December 22, 1965.